# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN C. OAKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.  09 C 1947 |
| v. | ) |
| | ) |
| CITY OF CHICAGO, | ) HONORABLE DAVID H. COAR |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Brian C. Oakes complains that the City of Chicago discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, when it declined to interview him for the director of police records position and hired a substantially younger applicant, despite Oakes's allegedly superior qualifications. The City has moved for summary judgment. For the following reasons, that motion is GRANTED.

## FACTS[1]

On May 9, 2008, Brian Oakes applied to be the new director of police records ("DPR") for the Chicago Police Department ("CPD"). He was fifty five years old at the time. Oakes was one of 141 applicants, but he was not among the three applicants selected for an interview. Instead, the City interviewed John Roberts, Lynn McCullough, and Joseph Perfetti, and it ultimately hired Perfetti. Perfetti's precise age has not been disclosed in either party's Local Rule 56.1 statement, but there seems to be no dispute that he is substantially younger than Oakes.

---

[1] Oakes's Local Rule 56.1 statement of additional facts substantially fails to comply with that rule and with this court's standing order on submissions at summary judgment. Many entries are whole paragraphs that string together multiple statements of fact, often without adequate citations to the record. Many entries are rife with conclusions, arguments, self-serving opinions, assertions not supported by competent evidence, and mischaracterizations of the record. The court has stricken such entries, accepting only the relevant statements of material fact that are supported by proper citations or else by evidence the court has been able to discern without rummaging through the entire record. The court has also stricken noncompliant responses to each party's Local Rule 56.1 submissions.

- 1 -

(Oakes believes Perfetti is "about 34.") Oakes joined the CPD in 1973 as a patrol officer and retired as a sergeant in 2005, when he took up employment at the Office of Emergency Management Communications until 2007. Oakes worked in the Records Division of the CPD from April 2002 to January 2005. During that time, he intermittently served as acting DPR for a total of about ten days.

### *The Director of Police Records Position*

The CPD's Bureau of Administrative Services is divided into two sections, which in turn are divided into nine divisions. An assistant deputy superintendent ("ADS") is in charge of each section. ADS Marvin Shear is in charge of one section, comprising the Finance, Human Resources, General Support, Fleet, and Facilities Divisions; ADS Howard Lodding is in charge of the other, comprising the Information Services, Records, Research and Development, and Professional Counseling Programs Divisions. Theodore O'Keefe is the deputy superintendent who has overseen day-to-day operations of the Bureau since July 2007. The ADS in charge of the Records Division is the DPR's immediate superior. The DPR directly oversees the day-to-day operations of the Records Division, which handles a variety of law-enforcement records in paper and electronic form and employs over 300 workers in two sections and twenty subsections.

On May 5, 2008, the City's Department of Human Resources posted a job announcement for a new DPR on its job-application website. Applicants were invited to apply electronically by uploading a resume or by filling out an electronic application form. The electronic application form appears to have a field for the applicant's date of birth. Shear remembered there being age information in some of the applicants' submissions. Oakes testified that he reviewed "roughly . . . 140" applications in connection with this litigation and did not see any birth dates listed on any of them.

*The DPR Selection Process*

O'Keefe appointed Shear to perform an initial screen of the applicants. Shear had previously been the ADS in charge of the Records Division and had participated in the DPR selection process in 2004 as an interviewer. As part of that process, Shear interviewed Oakes, Perfetti, and Mary Kay Hegarty, who got the job. As the initial screener in 2008, Shear reviewed all 141 applicants' resumes (or application forms) in light of the screening criteria sheet, which he testified he had no hand in preparing, and the DPR job description. Shear considered five factors: educational credentials, prior experience, overall employment history, experience within the law-enforcement community, and employment specifically related to police criminal history records management. As he reviewed the applicants' submissions, it became clear to Shear that he knew several of them personally, but he never told O'Keefe. Shear did not take any written notes while reviewing the applicants' submissions.

O'Keefe testified by affidavit that he instructed Shear to select three applicants to be interviewed; Shear testified in his deposition that he was required (by what or whom he did not say) to select at least two and could have selected more than three. O'Keefe and Shear agreed, in any case, that three was an appropriate number. After Shear completed the screening process, he forwarded the names of the three candidates he selected to the CPD's Human Resources Division. He did not rank the candidates in terms of their qualifications or provide any further input to the interviewers. City policy forbids the screener from conducting the interviews; O'Keefe and Tracey Ladner, the director of the Human Resources division, conducted the interviews. Both recommended Perfetti, who began as the new DPR on August 1, 2008.

O'Keefe testified by affidavit that he determined that Lodding should not participate in the hiring process because Lodding directly supervised one of the applicants, namely Perfetti,

who was the acting DPR at the time of the screening process. As acting DPR, Perfetti was Oakes's supervisor. Lodding also knew Perfetti's father-in-law, a former deputy superintendent of the CPD.

### *Shear's Choice of Candidates*

Shear testified by affidavit that he did not select Oakes for interview because he believed that McCullough, Roberts, and Perfetti were more qualified than Oakes. Shear testified that, based on his comparison of their resumes, he concluded that McCullough, Roberts, and Perfetti all had either more years of records management experience or a higher level of supervisory authority than Oakes, or both.

Regarding McCullough, Shear testified by affidavit that he selected her for interview because her resume indicated that she has a master's degree and eleven years of records management experience as a sergeant with the Cook County Sheriff's Department. Shear further testified that he selected Roberts for interview because his resume indicated that he holds a doctoral degree; that he worked in several divisions of CPD and achieved every nonexempt sworn rank, including patrol officer, detective, sergeant, lieutenant, and captain; and that he oversaw police records as a sergeant in CPD's Bureau of Technical Services. Lastly, Shear testified that he selected Perfetti for interview because his resume indicated that he served as the acting DPR for over a year and managed two sections of the Records Division for over six years, and that he has a master's degree.

At his deposition, Shear testified that "[a]s far as records are concerned and the management within records, I would say that [Oakes] has more experience than Mr. Roberts." He also testified that Oakes has more experience than McCullough as far as CPD records in particular are concerned, and that Oakes had a working knowledge of CHRIS, the Criminal

History Records Information Systems.

O'Keefe and Ladner took notes on candidate assessment forms during their interviews with Roberts and McCullough. With respect to three hiring criteria examined during the interviews, each interviewer determined whether each candidate "clearly demonstrates competency," "demonstrates some aspects of competency," or "did not demonstrate competency." Roberts received "demonstrates some aspects of competency" ratings in all categories from O'Keefe; he received two "demonstrates some aspects of competency" ratings and one "did not demonstrate competency" rating from Ladner. McCullough received "did not demonstrate competency" ratings in all categories from O'Keefe; she received two "did not demonstrate competency" ratings and one "demonstrates some aspects of competency" rating from Ladner. There are no such forms for Perfetti in the record.

Oakes's resume indicates, among other things, that he has an MBA, approximately two years experience as a managing deputy director of 911 Operations at the Office of Emergency Management and Communications, and that he served as commanding officer of the CPD's Records Inquiry & Customer Service Section/Unit 163 from April 2002 to January 2005. Victoria Psichalinos, an almost-forty-year veteran of the CPD Records Department, testified that Oakes was "the go-to person on how to do things," and "the go-to person in regard to the functionalities of the overall operation."

Perfetti, McCullough, and Oakes did not provide their ages or birth dates on their resumes, and Shear had no independent knowledge of this data. Roberts provided his birthday and his age on his resume; he was fifty five years old at the time.

### *Comments Made to Oakes*

Oakes testified that sometime between the beginning of 2005 and the end of 2007, he had

a telephone conversation with Shear in which he informed Shear that he intended to apply for the DPR position when it became available. Shear "spontaneously" responded "that's Joe's job" or "that is Joe Perfetti's job." Oakes did not ask Shear what he meant by that remark. He just "chuckled" and took it to mean that "that was [Perfetti's] hope." There was no discussion of anyone's age in this conversation.

Oakes also testified that Andrew Velasquez told him that Shear said to Velasquez, "it's Joe's job." That conversation took place "in and around" the time Oakes learned that Perfetti had been selected.

Oakes first learned that Perfetti had been selected as DPR on July 26, 2008, also during a conversation with Velasquez. Later that evening, Oakes called Lodding on the phone to verify this information. Oakes testified that "[Lodding] told [Oakes] that when [Lodding] was told by Mr. Shear and Mr. O'Keefe that this was going to go to the younger man, [Lodding] opted out of the process and chose not to be a party to it." Oakes further testified that Lodding never specifically attributed this comment to any one individual; it was just "what he was told" during a meeting at which Shear and O'Keefe were present.

Lodding testified that he had no recollection of any conversation with Shear regarding the process of selecting a new DPR. He did have a conversation with O'Keefe, but had no recollection of O'Keefe telling him that "the younger man" was going to get the job or that Perfetti was going to get the job. Lodding further testified that when Oakes called him, Lodding "told him, Brian, I can't talk to you about this job. You want to talk about anything else but this, I'll talk to you, otherwise I cannot talk to you about anything about this job." Oakes "went on and on about how he couldn't believe that he didn't get this job," while Lodding listened.

Psichalinos testified that she was with Oakes when he called Lodding and that she could

- 6 -

hear what Oakes said but not what Lodding said. She testified that she heard Oakes say something to the effect of "Oh, so they already had it decided. They said the young guy or the young man was going to get it," and "so that is why you opted out of the process for when they were doing the applications interviews . . ."

## SUMMARY JUDGMENT STANDARD

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

The nonmoving party, in turn, may not rest on the allegations in his pleadings or conclusory statements in affidavits; he must support his contentions with evidence that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c). To avoid summary judgment, the nonmovant must do more than raise a "metaphysical doubt" as to the material facts. *See Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted). And "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## ANALYSIS

The ADEA prohibits an employer from refusing to hire an individual because of his age. 29 U.S.C. § 623(a)(1). "To establish a claim under the ADEA, a plaintiff-employee must show

that the protected trait (under the ADEA, age) actually motivated the employer's decision"—that is, the employee's age must have "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). Moreover, it is not enough, under the ADEA, to show that age was one among many motivating factors; "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2350 (2009). In other words, there are no "mixed motives" cases under the ADEA. *See id.* A plaintiff may proceed under the direct or indirect methods, *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006), or he may combine both approaches. *Simple v. Walgreen*, 511 F.3d 668, 670-71 (7th Cir. 2007). No matter what path he chooses, the basic question is whether his employer discriminated against him based on a protected ground. *Id.* at 671.

### *Direct Method*

Under the direct method, Oakes can avoid summary judgment "by presenting enough evidence, whether direct or circumstantial, of discriminatory motivation to create a genuine issue for trial." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Oakes contends that two statements in the record provide sufficient evidence for a jury to find that the City failed to hire him because of his age. The court disagrees.

*First*, Oakes points to a conversation in which he told Shear that he wanted to apply for the DPR position when it opened up. Shear responded, "[t]hat's Joe's job" or "that is Joe Perfetti's job." Oakes cannot pinpoint the timing of this conversation, except to say that it took place sometime between the beginning of 2005 and the end of 2007. This remark does not create a genuine issue of material fact as to whether the City failed to hire Oakes because of his age.

"[I]solated comments that are no more than 'stray remarks' . . . are insufficient to establish that a particular decision was motivated by discriminatory animus," even when the remarks are age related. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) (citation omitted). However, a particular remark by a decision maker can fund an inference of discrimination if it is made "around the time of" and "in reference to" the challenged decision. *See id.*; *Walker v. Bd. of Regents of the Univ. of Wis. Sys.*, 410 F.3d 387, 394 n.7 (7th Cir. 2005) (remark "contemporaneous" to decision can support inference of discrimination). Shear's comment was made somewhere between five and twenty nine months before Perfetti was hired. It was made long before any particular, concrete choice of candidates had ever been presented to Shear. For these reasons, it fails to support an inference of age discrimination against Oakes.

Even more obviously, Shear's ambiguous comment says nothing about anyone's age. Oakes testified that at first, he thought it just meant that Perfetti also wanted to be DPR when the position became available. Perfetti had served as acting DPR for over a year, so depending on when this remark was made, it may have been a harmless, literal report of the facts at the time. At best, Shear's comment is some evidence that the fix was in—that, as Oakes says, "prior to reviewing applications and interviewing candidates, it was pre-determined that Perfetti was going to be chosen for the position over [him]." But that is not evidence that Perfetti was going to be chosen *because* he was younger than Oakes; if anything, it suggests that the decision to hire Perfetti rather than Oakes was *not* based on their relative ages. Perhaps, as Oakes himself suggests, Perfetti had connections: Lodding and Shear both knew Perfetti's father-in-law, a one-time deputy superintendant of the CPD. In any event, employment discrimination laws do not protect against all varieties of complaints about an employer's hiring practices—they only protect employees and would-be employees who complain about discrimination based on

specific, protected grounds. *See Nair v. Nicholson*, 464 F.3d 766, 769 (7th Cir. 2006); *Hammer v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000). Shear's comment is not evidence—direct or circumstantial—of discrimination; it is not evidence that the selection process for the DPR position was rigged on the basis of age.[2]

*Second*, Oakes points to a telephone conversation he had with Lodding on July 26, 2008, the same day he learned from Velasquez that Perfetti had been chosen as the new DPR. Oakes testified at his deposition that Lodding told Oakes that either Shear or O'Keefe told Lodding that "the position" was "going to the younger man." Oakes further testified that Lodding told him that upon learning of this, Lodding "opted out of the [selection] process and chose not to be party to it." Oakes contends that the statement of the ultimate declarant (whoever that may be) is an admission of an agent of a party opponent. *See* Fed. R. Evid. 801(d)(2)(D).

The proffered admission, as Oakes admits, is bound up in "two layers of out of court statements." Granting *arguendo* that the statement of the ultimate declarant qualifies as an admission, Oakes must still show that Lodding's report of that statement to Oakes is itself admissible under a hearsay exception or exclusion. *See* Fed. R. Evid. 805. He has not done so.

Oakes relies entirely on *Yates v. Rexton, Inc.*, 267 F.3d 793 (8th Cir. 2001). In *Yates*, the Eighth Circuit held that "[s]ignificant involvement, either as an advisor or other participant in a process leading to a challenged decision," may be sufficient to establish that a declarant is an agent of a party opponent, even if the declarant was not one of the "actual decision-makers." *Id.* at 802 (citing and quoting *Equal Employment Opportunity Comm'n v. Watergate at Landmark Condo.*, 24 F.3d 635, 640 (4th Cir. 1994)). There is no need to delve into the particulars of

---

[2] The same would have to be said for Shear's comment to Velasquez, "it's Joe's job"—even assuming the comment was made before Perfetti was hired, so that it might be more than just a literal report of what decision had been reached. The timing of this comment, however, is unclear from the record. In any case, Oakes does not rely on or even mention it in his brief in opposition, so the court raises the point only in passing.

*Yates*, since it is clear that Lodding did not have any "significant involvement" in the process leading to the selection of Perfetti to be DPR. On this the parties agree, even if they dispute the reason why Lodding was not involved. For present purposes, that dispute is immaterial; even crediting Oakes's explanation over Lodding's own, it is still the case that "Lodding opted out of the process and chose not to be a party to it." Oakes concedes, in effect, that Lodding was not an agent of the City under *Yates*, and he cites no authority—nor is the court aware of any—that would count Lodding as an agent under the present facts.

Moreover, Lodding told a very different story at his deposition. He testified that he had no recollection of any conversation with Shear regarding the process of selecting a new DPR. He did have a conversation with O'Keefe, but had no recollection of O'Keefe telling him either that "the younger man" or that Perfetti was going to get the job. Far from conveying any admissions to Oakes when Oakes called him, Lodding testified that he told Oakes, "I can't talk to you about this job," and that Oakes just went "on and on about how he couldn't believe that he didn't get this job." On Lodding's version of the facts, no admission was ever made to him; *a fortiori*, no admission was ever conveyed to Oakes. Thus, Lodding's testimony provides no evidence of an admission within the meaning of 801(d)(2)(D). Oakes's own testimony is not competent to counter Lodding's on this matter, since Oakes has no personal knowledge of any admission by Shear or O'Keefe. Oakes can only counter Lodding's testimony as to what transpired in *their* conversation, but Oakes cannot offer that conversation as proof of the fact of an admission: that would be hearsay, if nothing else. And the same goes for Psichalinos's testimony regarding the phone call between Oakes and Lodding. In short, Oakes has not produced any competent evidence of an admission by an agent of the City.

The only admissible evidence, direct or circumstantial, that Oakes has produced is the stray comment by Shear. Because that comment was age neutral, Oakes has no direct evidence to support his discrimination claim. Nor does that comment, standing alone, paint the "convincing mosaic" of circumstantial evidence that Oakes needs in order to prevail. *See, e.g.*, *Mach v. Will County Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009) (citations omitted). Under the direct method of proof, the City is entitled to summary judgment.

### *Indirect Method*

In order to prove discrimination under the burden-shifting framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), which has been extended to ADEA cases in this circuit, *see Shager v. Upjohn Co.*, 913 F.2d 398, 400 (7th Cir. 1990), Oakes must first establish a prima facie case. This requires Oakes to show that (1) he is forty or more years of age; (2) he applied for and was qualified for the DPR position; (3) the City rejected him; and (4) the City hired another similarly situated but substantially younger individual for the position. *See Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003). If Oakes establishes a prima facie case, the City must respond by articulating a nondiscriminatory reason for the decision to hire Perfetti. *See Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 556 (7th Cir. 2001). Oakes must then produce evidence from which a rational factfinder could conclude that the City's proffered reason was pretextual. *See id.*

The City assumes *arguendo* that Oakes establishes a prima facie case, and in response, it puts forth a nondiscriminatory reason for the decision not to hire or even to interview him: based on his screen of all the applicants, Shear believed that Perfetti, McCullough, and Roberts were the most qualified. The court therefore assumes without deciding that Oakes has established a prima facie case and proceeds directly to the pretext inquiry. *See id.* ("When the defendant has

proffered an explanation . . . that the court determines to be non-pretextual, the court may avoid deciding whether the plaintiff has met his prima facie case and instead dismiss the claim because there is no showing of pretext.") (quoting *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998)).

"Pretext means a lie, specifically a phony reason for some action. The question is not whether the employer properly evaluated the competing applicants, but whether the employer's reason for choosing one candidate over the others was honest." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (citations and quotation marks omitted). 'Pretext for discrimination' therefore means "something worse than a business error; [it] means deceit used to cover one's tracks." *Id.* (citation and quotation marks omitted). Thus, even if the City's reasons for selecting Perfetti over Oakes were "mistaken, ill considered or foolish, so long as [the City] honestly believed those reasons, pretext has not been shown." *Id.* (citation and quotation marks omitted).

Oakes contends that "Shear could not justify selecting Perfetti over [Oakes], which explains why they chose not to interview [Oakes] at all." Instead, Shear intentionally selected two unqualified candidates to interview alongside Perfetti so that Perfetti would stand out as the obvious choice for the job. Thus, Oakes argues that based on a review of his qualifications relative to Perfetti, McCullough, and Roberts, he should have been hired; the fact that he was not—or more precisely, that he was not even interviewed—shows that the screening and interview process was a sham designed to cover up an *ex ante* and discriminatory preference for the younger Perfetti.

Because he relies on a comparative-qualifications argument, Oakes bears a very difficult burden. The Seventh Circuit considered such arguments at length in *Millbrook* and held that:

> where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing

> qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.

280 F.3d at 1180 (citation and internal quotation omitted). In other words, "[Oakes's] credentials would have to be so far superior to [Perfetti's] credentials . . . that no reasonable person, in the exercise of impartial judgment, could have chosen [Perfetti] over [Oakes] . . . ." *Id.* (citation and internal quotation omitted).

Oakes cannot meet his burden. As an initial matter, his assertions that Roberts and McCullough were "totally unqualified" and were selected for the sole purpose of ensuring that Perfetti would shine in the interview process can only get him so far, even if they are true. Oakes's claim is for a failure to *hire*, not a mere failure to interview, so he must show that the choice of Perfetti over himself was so indefensible that the City must be lying when it says that Perfetti was viewed by the relevant decision maker(s) as the most qualified applicant. And again, the Seventh Circuit has repeatedly stressed that the court's "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." *Id.* at 1181 (citation and internal quotations omitted). Thus, this court declines to interfere with the City's stated preference for Perfetti.

Shear testified in his affidavit that Perfetti's prior experience as acting DPR for over a year—the precise position he and Oakes competed for—was a significant factor in the decision to interview him rather than Oakes. Reasonable people of impartial judgment could surely see that experience as a valid basis for ultimately hiring Perfetti over Oakes; Oakes had only served as acting DPR here and there, for a grand total of about ten days. Shear also testified that he considered Perfetti's six years of experience managing two sections of the CPD's Records Division to be an important factor. Whether he gave too much weight to these or to any other

particular experiences that Perfetti could claim on his resume, or not enough weight other relevant experiences that Oakes could claim on his—these are not legitimate questions for this court, or for a jury, to decide. It may be true that Oakes would have been a better choice for an interview than either McCullough or Roberts; Oakes's resume does indeed show many relevant qualifications, and O'Keefe and Ladner's notes from the interviews show that they deemed McCullough and Roberts to lack demonstrable competence in some of the relevant job skills. Even if those facts alone could show that the decisions to interview McCullough and Roberts were more than just bad judgment, Oakes has clearly not shown that the choice of Perfetti over him was so implausible, so indefensible on the merits that the City could only be lying to cover its tracks. By finding in his favor at summary judgment, this court would be improperly sitting as a "super personnel department" for the City. *See also id.* at 1182 (liability in employment discrimination case "cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified applicants") (quoting *Fishbach v. District of Columbia Dep't of Corrections*, 86 F.3d 1180 (D.C. Cir. 1996).

Moreover, Oakes's contention that no reasonable and impartial person could view Perfetti as the superior applicant is based entirely on his own review of the applicants' credentials, but "[a] plaintiff's contention that he is the better candidate for a vacancy constitutes nothing but the employee's own opinion as to his qualifications." *Id.* at 1181. This opinion "cannot create an issue of material fact because an employee's perception of his own performance . . . cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities." *Id.* (citation and internal quotation omitted). So Oakes would need something more than his self-serving opinion as to his own superior credentials in order to show pretext. The only other admissible evidence he has to offer is the stray, age-neutral remark that Shear made

sometime between five and twenty nine months beforehand. That remark is too remote; its connection to the concrete application and hiring process is far too attenuated; and its relevance to the issue of age discrimination is entirely too speculative to create a genuine issue of material fact as to Shear's motives for letting Perfetti but not Oakes "pass . . . through the gate." Taken together, Shear's remark and Oakes's attack on the other candidates' credentials fail to show that the City's proffered reason for hiring Perfetti was pretext.

And even if Oakes's evidence were sufficient to discredit the entire screening and hiring process, which is already too much weight for it to bear, it certainly does not show that the process was a pretext for age discrimination. For even if Shear's remark—"that is Joe Perfetti's job" or "that's Joe's job"—were enough to show that the fix was in on Perfetti's behalf, the conclusion that age was the but-for cause of it all would remain entirely speculative. In rare cases, "although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). For example, "[i]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent." *Id.* (quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1338 (2d Cir. 1997), *abrogated on other grounds by Tori v. Marist Coll.*, 2009 U.S. App. LEXIS 19755 (2d Cir. Sept. 2, 2009)). Oakes himself often points to such circumstances—including Lodding and Shear's connections to Perfetti's father-in-law, a former deputy superintendent of the CPD—without ever pointing to any circumstances that would support a competing inference of age-based discrimination. So even if Oakes has created a weak issue of fact as to whether Perfetti was favored or selected *ex ante* to become the next DPR, his evidence suggests that any favoritism for Perfetti was just that:

- 16 -

favoritism for Perfetti. No admissible evidence suggests that any favoritism had anything to do with age; thus, whatever grievance Oakes may have with Shear or with the City, if any, would not support a claim under the ADEA. The City is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the City's motion for summary judgment is GRANTED.

Enter:

/s/ David H. Coar

_____

David H. Coar

United States District Judge

**Dated: December 22, 2009**